**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **JOSEPH MARK LEBLANC, #1361901,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **2:09-CV-0160-J-BB** |
| | § | **(consolidated with 2:10-CV-0033-J-BB)** |
| **JOHN ADAMS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court for consideration is Defendants' motion for summary judgment filed on June 15, 2011. Plaintiff filed his response on August 12, 2011. For the reasons that follow, it is recommended that Defendants' motion for summary judgment be granted.

## I.  BACKGROUND

Plaintiff, a state prisoner within the Texas Department of Criminal Justice, Correctional Institutions Division, filed a *pro se* civil rights action under 42 U.S.C. § 1983. The Court severed some of the claims and consolidated others, and then summarily dismissed all defendants except for Correctional Officer Matthew Drake, Sargent Twyla Hughes, Correctional Officer Jeremy Woodruff, and Licensed Vocational Nurse (LVN) Patty Wilkins. (*See* Doc. 10, 17, 19, and 23.)

Plaintiff's amended complaint alleges (1) Defendant Drake used excessive force against him on January 15, 2009; (2) Defendant Hughes left him outside in the freezing cold on a

stretcher, in just his underwear for over 30 minutes, in an attempt to cover up Drake's alleged wrongdoing during the use of force; (3) Defendants Drake and Woodruff failed to protect him from violence by other inmates; (4) Defendant Woodruff tampered with his food in unspecified ways; and (5) Defendant Wilkins ignored and destroyed his sick call requests, depriving him of medical care.  (Doc. 5 at 8-12.)  Plaintiff seeks monetary damages and declaratory and injunctive relief.  *Id.* at 9, 13-14.

By their motion for summary judgment, Defendants Drake, Hughes, Woodruff, and Wilkins contend they are entitled to Eleventh Amendment Immunity as to claims against them in their official capacities, and are entitled to qualified immunity as to claims against them in their individual capacities.  (Doc. 67.)  In response, Plaintiff concedes that he does not sue the Defendants for money damages in their official capacities, but is only seeking injunctive relief. Plaintiff further asserts genuine issues of material fact remain as to his claims against the Defendants in their individual capacities.  Plaintiff also argues the Defendants have perpetrated a fraud upon the Court and are not entitled to qualified immunity.  Plaintiff's allegations of fraud are, in essence, an argument that defendants have committed perjury throughout the proceedings.

## II.  DISCUSSION

### A.    <u>Summary Judgment and Qualified Immunity Standards</u>

To prevail on a motion for summary judgment, the moving party has the initial burden of showing there is no genuine issue of any material fact and that judgment should be entered as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  Once the moving party has made an initial showing, the party opposing the motion for summary judgment may not merely rely on

his pleadings, but must come forward with competent evidentiary materials that establish a genuine fact issue. *Anderson,* 477 U.S. at 256-257; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87 (1986).

Here, Defendants move for summary judgment based on qualified immunity. The doctrine of qualified immunity shields officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, the court conducts a familiar two-step inquiry: First the court determines whether Plaintiff's allegations allege facts to establish that the official violated the Plaintiff's constitutional rights; second, the court must decide if the right at issue was "clearly established" at the time of the incident; and, if so, whether the conduct of the Defendant was objectively unreasonable in light of contemporaneous clearly-established law. *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998); *Hope v. Pelzer,* 536 U.S. 730, 736, 739 (2002); *see McClendon,* 305 F.3d at 323. Although analysis under the first prong requires the court to consider currently applicable constitutional standards, analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question. *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

Qualified immunity shields officers from a suit for monetary damages if they could have reasonably believed their actions to be lawful, in light of clearly established law and the information they possessed at the time of the event. *Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct.

534, 536, 116 L.Ed.2d 589 (1991).  An officer is entitled to qualified immunity if his decision

was reasonable, albeit mistaken.  The qualified immunity standard "gives ample room for

mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly

violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341-343, 106 S.Ct. 1092, 1096-97, 89 L.Ed.2d

271 (1986).  Courts may "exercise their sound discretion in deciding which of the two prongs of

the qualified immunity analysis should be addressed first in light of circumstances in the

particular case at hand."  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), receding from *Saucier*

*v. Katz*, 533 U.S, 194 (2001).

**B.      Loss of "Discovery and Disclosure[s]"**

In his response to the motion for summary judgment, Plaintiff alleges he no longer has

the "discovery or disclosure[s]," presumably this means the medical records and other

disclosures received from the Defendants, which he claims are necessary to refute the motion for

summary judgment.  (Doc. 87 at 13; *see also* Doc. 34, 40, 43, 44 relating to Defendants'

discovery and disclosures.)  He contends "Lieutenant Evans had Officers take Plaintiffs [sic]

legal property after he used chemical agents on Plaintiff's cell mate."  (Doc. 87 at 13.)  He, thus,

claims he "has been placed at a disadvantage and request[s] the court to consider this and

investigate the reasons for Plaintiff's discovery and disclosure[s] not being returned to him and

the Defendants [sic] Attorneys part in this."  *Id.*

Throughout the pendency of this lawsuit Plaintiff has exhibited a pattern of requesting

extensions of time wherever any pleading is due.  In addition, he previously complained of being

denied his legal documents.  He alleged his legal papers were contaminated during a use of

chemical force against his cellmate and that he was separated from his legal property when he

was placed in lockdown on May 17, 2011.  (Doc. 76 at 1.)  Although plaintiff claimed his legal papers were destroyed, he did not identify the individual(s) who allegedly did these things.  *Id.* Later, in support of his July 2011 motion for extension of time to respond to the motion for summary judgment, Plaintiff stated that he did not have access to his legal property because he was in Administrative Segregation and the Unit was on administrative lock-down and, thus, that he was preparing the response without "the Disclosure and Discovery."  (Doc. 81 at 1-2.)  The Court notes this allegation was made <u>after</u> plaintiff alleged the records had been destroyed.

At no point has Plaintiff ever requested the Defendants be ordered to provide a second copy of the disclosure previously provided to him.  By his June 29, 2011 Motion to Extend Time and supporting Affidavit in this cause, Plaintiff requested an extension to file his response to Defendants' motion for summary judgment.  Plaintiff was granted that extension on July 1, 2011. Plaintiff did not request further relief, even in his subsequently filed Third Motion for Judicial Notice (document no. 77 on the docket), and the Court noted it was left to speculate what relief, if any, he wanted.  The Court denied the motion, noting the use of force Plaintiff was now complaining of was not a matter of which the Court could take judicial notice (document no. 78).

Plaintiff then filed, not a request for replacement of disclosure documents, but another request for an extension (docket no. 81).  The Defendants were ordered to respond regarding the alleged missing property (document no. 82) and then, were ordered to respond again, to inform the Court whether the unit was on lockdown (document no. 84).  Throughout all of this, Plaintiff never requested any further disclosure or replacement of disclosure documents, only repeated extensions of time.

With their response, Defendants provided documentation showing Plaintiff's legal materials and property had been confiscated when he was placed in administrative segregation on June 30, 2011, but were returned to him on July 19, 2011 (document no. 83).  Further, the documentation provided by Defendants showed that, at the time of the filing of document no. 83, the only property complaint Plaintiff was claiming was missing was a radio and a watch.

The Court had before it Plaintiff's continually shifting allegations that his legal property had been merely confiscated or that it had been destroyed, as well as the following facts:  (1) Plaintiff had filed his motion for extension on July 14, 2011; (2) Defendants' response that Plaintiff received his legal materials property on July 19, 2011; (3) Defendants' response with documentation showing Plaintiff had received his legal materials property on July 19, 2011 and the only complaint Plaintiff was still maintaining to prison officials at that time concerned a radio and a watch (neither of which was legal material); (4) the termination of the unit lockdown which Plaintiff claimed had obstructed his law library access; (5) Plaintiff's failure to respond and refute these representations or the documents supporting them; (6) the fact that the only relief Plaintiff was requesting was an extension, not a replacement of the confiscated or destroyed disclosure documents, and (7) Plaintiff's previous history of dilatory tactics in this cause.

Having considered all the above, the Court made the determination that Plaintiff had received his legal materials and legal property and had access to legal material from the law library.  Plaintiff had not justified his request for further extension of time (document no. 86), and the Court required Plaintiff to submit his response on or before August 5, 2011.

Plaintiff neither filed an objection nor sought reconsideration.

In light of the above, Plaintiff's latest eleventh hour allegation of missing discovery and/or disclosure documents is considered nothing more than a continuation of the dilatory tactics he earlier adopted whenever he has been required to prosecute his case.  Plaintiff does not explain why he failed to appraise the Court earlier of the alleged loss of his discovery and disclosure, by filing a proper motion with a specific request for relief.  *See* Jul. 13, 2011, Order (Doc. 78 at 2) denying Plaintiff's Third Motion for Judicial Notice because it made no specific request for relief.  Therefore, as a result of Plaintiff's unsubstantiated assertions and repeated dilatory tactics, the Court rejects his belated request to again investigate Defendants' alleged failure to return the "discovery and disclosure" to him.

**C.      Excessive Use of Force Claim**

Plaintiff alleges that on January 15, 2009, Defendant Drake used excessive force. Plaintiff alleges Defendant Drake slammed Plaintiff to the concrete floor, while he was restraining him outside of his cell during a cell search.  (Doc. 5 at 4.)  Drake asserts that he is entitled to qualified immunity because he acted in good faith in response to a reasonably perceived threat caused by Plaintiff's refusal to comply with an order.  (Def. MSJ at 8-9.)

In evaluating a use of force claim under the Eighth Amendment, "the core judicial inquiry is . . . whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992)(citing *Whitley v. Albers,* 475 U.S. 312, 320-22 (1986)); *see also Wilkins v. Gaddy,* ___ U.S. ___, 130 S. Ct. 1175, 1177-79 (2010) (per curiam) (clarifying that the core judicial inquiry in excessive force cases was the nature of the force, not the extent of the injury).  Five factors are relevant in determining whether an unnecessary and wanton infliction of pain was used in violation of an

inmate's right to be free from cruel and unusual punishment:  (1) the extent of the injury

suffered; (2) the need for the application of force; (3) the relationship between the need and the

amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5)

any efforts made to temper the severity of a forceful response.  *Baldwin v. Stalder*, 137 F.3d 836,

839 (5th Cir. 1998).  "Not every push or shove, even if it may seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."  *Johnson v. Glick,* 481 F.2d 1028,

1033 (2nd Cir. 1973) (cited with approval in *Hudson,* 503 U.S. at 9).  In applying the *Hudson*

factors, courts must remember "that prison officials 'may have had to act quickly and

decisively.'"  *Baldwin*, 137 F.3d at 840 (citation omitted).  Moreover, "'[t]he amount of force

that is constitutionally permissible . . . must be judged by the context in which that force is

deployed.'"  *Id.* (quoted case omitted).

      In his amended complaint, Plaintiff alleges Drake was "in an hostile and aggressive

frame of mind," when he came to Plaintiff's cell to conduct a cell search.  (Doc. 5 at 4.)  Plaintiff

then states that as soon as Plaintiff exited the cell in hand restraints, wearing only his boxer

shorts and shower shoes, "Drake began giving orders to Plaintiff to place his head on the wall

and put his feet on the wall"  *Id.*  Plaintiff did not think this was proper procedure.  *Id.*

Nevertheless, he concedes that he "stepped to the wall, but did not place his head on the wall

because th[is] Officer is known for slamming offenders [sic] head against the wall and hurting

them."  *Id.*  According to Plaintiff, Drake then "slammed him face first to the concrete [floor]

and then repeatedly slammed Plaintiff [sic] head to the concrete [floor] malicious and savagely."

*Id.* at 4-5.

      TDCJ officials conducted an investigation of the incident and determined the use of force

was warranted and that no excessive force was used against Plaintiff.  (Def. MSJ App. Exh. B at 4-5.)  The Fact Finding Inquiry and Use of Force Report (generated as a result of the investigation and incident) reflect that, while Drake maintained escort of Plaintiff outside of his cell, Plaintiff began to pull away from Drake's grasp.  (Def. MSJ App. Exh. B at 4-5, 22, 32, 50.) Drake attempted to talk to Plaintiff about why he was turning around.  *Id.*  Plaintiff, however, refused to cooperate and continued to ignore Drake's orders and turn his body away from the wall.  *Id.*  Drake then pinned Plaintiff against the wall and Officer Smith, who was maintaining escort of Plaintiff's cell mate, called for a supervisor.  *Id.*  Despite being pinned to the wall, Plaintiff continued to pull away from the wall and attempt to turn around.  *Id.*  Drake again ordered him to be still and to stay against the wall or further action would be taken.  *Id.*  When Plaintiff again refused to comply, Drake was forced to push Plaintiff to the ground to maintain control over him.  *Id.*  Additional staff responded, relieving Drake of responsibility, and an officer also began recording the incident.  *Id.*

The first *Hudson* factor considers the extent of the injury sustained.  Plaintiff alleges he suffered a "compound fracture" of the "oracle facial bone," blunt force trauma to the face and loss of use of his leg for eighteen days.  The Court notes a compound fracture is a fracture in which the bone is exposed.  Review of the DVDs submitted by Defendants shows a DVD of the incident following the take-down and including Plaintiff's cell-side examination by a nurse, his transport to the infirmary, his examination by medical personnel at the infirmary, his transport back to his cell, the taking of photographs to document his condition, and his release back into his cell.  The DVD showing moving images of the aftermath of the incident and the DVD showing the two photographs taken cellside to document plaintiff's condition clearly show there

is no blood on and certainly there are no bones protruding through Plaintiff's skin on his face[1].

The summary judgment evidence shows that, immediately following the incident, Plaintiff refused to stand, complaining of pain to his right hip and right eye.  (Def. MSJ App. Exh. B at 4, 24-25, 27-31.)  A nurse conducted an examination and requested that Plaintiff be taken to the medical department for assessment.  *Id.*  Plaintiff was assisted to his feet and onto a medical gurney and escorted to the medical department.  *Id.*  The examination revealed two contusions, one to Plaintiff's right hip and a second one to his right eye, which were consistent with his initial complaints of right hip and right eye pain.  *Id.*  Plaintiff was released from the medical department with the notation that he had no injuries beyond first aid, although a follow-up appointment was scheduled with Dr. Patel for the next day.  *Id.*  Plaintiff was escorted back to his cell, where he knelt down with assistance for removal of his leg restraints.  *Id.*

In the amended complaint, Plaintiff asserts he could not see out of his right eye or move his right leg, immediately following the incident.  (Doc. 5 at 9.)  The DVD shows Plaintiff moving his right leg, although he exhibited pain symptoms when doing so.  Plaintiff was able to crawl on his knees into his cell and cooperate with the removal of the handcuffs.  The DVD also shows Plaintiff was also able, a moment later, to stand up and walk around his cell with considerably more ease while talking into the camera, complaining of Defendant Drake's attitude when he first told Plaintiff to stand against the wall.

Plaintiff also asserts that, as a result of the excessive force incident, he suffered a "compound fracture to the Oracle facial bone, [and] blunt force trauma to the head and face,"

---

[1]Even though one DVD shows, in part, some photographs being taken cellside before plaintiff's release back into his cell, and the other DVD shows the photographs that were taken, Sgt. Hughes received some reprimand for failure to take "required photos."  This discrepancy, if there is one, does not alter the Findings of this Court.

along with "severe pain, blackouts, dizzy spells, and blurry visions." *Id.* at 9, 11.  Defendants'

motion for summary judgment does not address Plaintiff's claims about the extent of his injuries

in detail.  (Def. MSJ at 8-9.)  Defendants, however, do provide copies of Plaintiff's I-60s

requests for medical care.  (Def. MSJ at Exh. C)  Those records document that Plaintiff's injuries

after the use of force in question were limited to the contusions or bruises noted earlier and do

not reflect any fracture or other more serious injury, most notably they do not reflect any fracture

with bones exposed or sticking through the skin.

In his unsworn response, Plaintiff reiterates suffering "blunt force trauma to the head,

broken zygomatic arch and orbital bone in the face, partial loss of vision in right eye, temporary

paralysis on the right side for 18 days, temporary loss of memory, and blackouts."  (Doc. 87 at

8.)  His response, however, presents no competent summary judgment evidence of these injuries

or that Plaintiff suffered an injury apart from the initial bruising to his right eye area and hip. As

a result, the evidence before the Court reflects no injuries beyond contusions to his right eye area

and hip, which required no more than first aid.  It is noted that Defendant's Exhibit "C" contains

some records indicating x-rays were taken, but contains no mention of any fracture, much less a

compound fracture.  The extent of the injury, as reflected in the summary judgment evidence

before the Court, is not consistent with the wanton and savage beating Plaintiff alleges.  The first

*Hudson* factor is consistent with a reasonable use of force.

The second factor concerns the need for the application of force.  The competent

summary judgment evidence reflects the use of force was brought about by Plaintiff's refusal to

follow Drake's order to keep his head and feet on the wall, and in turning away from the wall.

(Def. MSJ App. Exh. B at 4-5, 22, 32, 50.)  In his amended complaint, Plaintiff plainly states

that, in response to Defendant Drake's order to place his head and feet on the wall, Plaintiff stepped to the wall but did not put his head on the wall.   During the Fact Finding Inquiry, Plaintiff conceded turning his torso in direct contravention of Drake's orders.   (Doc. 5 at 8, Def. MSJ App. Exh. B at 4.)   This resulted in Drake pinning Plaintiff to the wall and warning him that further force would be used if he failed to comply.   (Def. MSJ App. Exh. B at 4-5, 22, 32, 50.) Because Plaintiff again refused Drake's order to keep his head on the wall, a use of force was necessary and was appropriate to restore order and discipline.   Plaintiff does not dispute that Drake warned him that further force would be used.   While he complains that Drake's manner of talking to offenders was improper, this did not give him the right to disobey orders at his whim. *See, e.g., Meadows v. Gibson,* 855 F.Supp. 223, 225 (W.D.Tenn. 1994) (prisoners cannot pick and choose which prison rules to obey).   It clearly did not justify Plaintiff's attempts to turn away from the wall or refuse to place his head on the wall contrary to Drakes's instruction.   The summary judgment evidence of record on this factor demonstrates there was a clear need for the use of some force.

The third *Hudson* factor involves the relationship between the need and the amount of force.   Plaintiff presents an argument that he posed no threat because he was in hand restraints and seems to feel that this fact, alone, sufficiently demonstrates there was no need for any use of force.   (Doc. 87 at 8-9.)   However, the fact that Plaintiff was in hand restraints is not at all dispositive of this issue.   The Fifth Circuit has long recognized that simply handcuffing a suspect does not instantly and completely eliminate all risks that the suspect will flee or do others harm. *United States v. Sanders*, 994 F.2d 200, 209 (5th Cir. 1993).   As noted by the *Sanders* Court:

> Handcuffs are a temporary restraining device; they limit but do not
> eliminate a person's ability to perform various acts [citation

> omitted.]  They obviously do not impair a person's ability to use
> his legs and feet, whether to walk, run, or kick.  Handcuffs do limit
> a person's ability to use his hands and arms, but the degree of the
> effectiveness of handcuffs in this role depends on a variety of
> factors, including the handcuffed person's size, strength, bone and
> joint structure, flexibility, and tolerance of pain.  Albeit difficult, it
> is by no means impossible for a handcuffed person to obtain and
> use a weapon concealed on his person or with lunge reach, and in
> so doing to cause injury to his intended victim, to a bystander, or
> even to himself.  Finally, like any mechanical device, handcuffs
> can and do fail on occasion.

*Id.* at 209.

As noted above, the use of force occurred because of Plaintiff's repeated refusal to follow Drake's order to keep his head and feet on the wall.  (Def. MSJ App. Exh. B at 4-5, 22, 32, 50.) Drake twice verbally admonished Plaintiff to keep still and keep his head on the wall.  *Id.* Plaintiff escalated the situation by refusing the order a third time.  *Id.*  In light of Plaintiff's repeated refusal to comply with legitimate orders, he exhibited clearly impermissible activity in a prison setting, and Drake was forced to push Plaintiff to the ground and restrain him there.

Plaintiff claims that it was unreasonable for Drake to slam him on the concrete floor head first.  (Doc. 87 at 8-9.)  Plaintiff, however, fails to present any evidence to establish that Drake slammed him face first to the ground during the excessive force incident.  *Cf. Brown v. Larty*, 2011 WL 4736917, 4-5 (E.D.Tex. 2010) (denying motion for summary judgment because of issues of fact as to whether officer pushed inmate down face first during excessive force incident, which caused inmate to suffer serious head injuries –  broken jaw and laceration to chin which required seven stitches -- and for which officer was disciplined).  Plaintiff's conclusory, unsubstantiated assertions that he suffered a head injury, apart from the bruising to his right eye, is not competent summary judgment evidence of excessive force.  *See Duffie v. United States*,

600 F.3d 362, 371 (5th Cir.), *cert. denied*, 131 S. Ct. 355 (2010).  Plaintiff cannot rely merely on

unsubstantiated assertions or conclusory allegations in responding to Defendants' motion for

summary judgment.  *Id.*  Moreover, Plaintiff assumes Defendant Drake could completely control

Plaintiff's body, but Plaintiff overlooks that Drake "'had to act quickly and decisively'" to

maintain order, *Baldwin*, 137 F.3d at 840 (quoted case omitted), and was dealing with a prisoner

who was already physically resisting control.  Therefore, the summary judgment evidence on the

third *Hudson* factor indicates the amount of force utilized was not clearly excessive to the need

or wantonly inflicted.

　　The fourth *Hudson* factor concerns the threat reasonably perceived by the responsible

official.  Again, Drake twice ordered Plaintiff to keep his face to the wall, but Plaintiff refused to

do so.  By his own admission, Plaintiff kept trying to pull his head back and turn his torso in

contravention of Drake's orders.   (Doc. 5 at 8, Def. MSJ App. Exh. B at 4.)  Although Plaintiff

was handcuffed and temporarily pinned against the wall, he continued to struggle, posing a threat

to Drake, who was tasked with maintaining control of his escort.  *Id.* at 5.  Moreover, Plaintiff's

disobedience in and of itself created a threat to Drake, which required further intervention.  *See,*

*e.g., Minix v. Blevins*, 2007 WL 1217883, 25 (E.D. Tex. 2007) (disobeying of orders itself poses

a threat to the order and security of the prison as an institution); *Soto v. Dickey,* 744 F.2d 1260,

1270–71 (1984) (same).  Clearly this is not a case where the inmate neither posed a threat to the

officer nor provoked the officer in any way.  *See, e.g., Clark v. Gonzalez,* No. 96-41146, 1997

WL 681275, at *2-3 (5th Cir. Oct. 23, 1997) (unpublished per curiam) (slamming of pretrial

detainee into walls was an excessive use of force when the prisoner was handcuffed and did

nothing to provoke the officers); *Carrington v. City of Lufkin,* No. 94-40139, 1994 WL 500481,

at *2 (5th Cir. Aug. 31, 1994) (unpublished per curiam) (banging a person's head into a car and dropping them to the ground when they posed no threat during arrest would be "an objectively unreasonable use of force clearly excessive to the need").  Therefore, examination of the summary judgment evidence on the fourth *Hudson* factor supports a determination that a reasonable officer would have perceived a threat and would have felt the use of some force was necessary to re-establish security and control.

The final *Hudson* factor concerns efforts to temper the severity of the forceful response. The summary judgment evidence shows that Drake instructed Plaintiff to keep his head on the wall.  (Def. MSJ App. Exh. B at 4-5, 22, 32, 50.)  Plaintiff disregarded the order.  *Id.*  After Drake pinned him to the wall and warned him that further force would be used, if he did not keep his head on the wall, Plaintiff again refused to comply.  *Id.*  At this point, verbal orders had been unsuccessful, and Drake needed to employ more than just verbal orders to control Plaintiff.  *Id.* Defendant Drake clearly attempted to temper the situation before resorting to the additional use of force.  *Id.*  Evidence concerning the fifth factor shows Drake made efforts to temper the severity of the force utilized but those efforts were frustrated by Plaintiff.  This factor weighs in favor of a determination of a reasonable use of force to establish order and security, not force utilized for the very purpose of causing harm.

In response to the motion for summary judgment, Plaintiff  requests the Court to review the pod security camera, which is not part of the summary judgment evidence.  (Doc. 87 at 8-9.) Apart from that, he does not present or cite any competent summary judgment evidence for the proposition that he was the victim of an excessive use of force.  *See Duffie*, 600 F.3d at 371. Plaintiff does not submit any medical evidence nor does he reference any medical records he has

ever seen which document severe injuries.  Plaintiff cannot rely merely on unsubstantiated assertions or conclusory allegations in responding to Defendants' motion for summary judgment. *Id.* Liberally viewing the summary judgment evidence in the light most favorable to the Plaintiff, the Court finds that Drake applied force in a good-faith effort to maintain discipline and that he did not use force maliciously and sadistically for the very purpose of causing harm to Plaintiff.  The five *Hudson* factors all support a conclusion that the force utilized by Defendant Drake was reasonable and was utilized in an effort to re-establish security and control, not for the very purpose of causing Plaintiff harm.

Given the summary judgment evidence clearly showing a need for some force, that efforts were made to temper the severity of the force utilized, the relationship between the need and the amount of force used, and the summary judgment evidence supporting only contusions and bruises it is clear that Defendant Drake has shown a reasonable officer in Drake's position would have perceived the need to utilize force and would have utilized at least the amount of force utilized by Drake.  Plaintiff has failed to adduce proof that the amount of force utilized was excessive to the need.  Defendant Drake is entitled to judgment as a matter of law on the basis of qualified immunity.

**D.    Deliberate Indifference by Defendant Hughes**

Plaintiff alleges that, following the use of force incident, Defendant Hughes placed him on a stretcher and left him outside in sub-20 degree weather for over 30 minutes, wearing only his boxers.  (Doc. 5 at 9.)  Relying on the use of force video, Hughes states that Plaintiff was, in fact, placed on a gurney following the use of force and that Plaintiff was wheeled outdoors twice following the incident in question, first to go to the medical building and then to return to his

cell.  Hughes states Plaintiff was outside for no more than eight minutes in total (about four

minutes for each leg of the trip).  (Def. MSJ at 9.)  While Plaintiff concedes that "he does not

have any discovery or disclosure to . . . counter Defendant Hughes's assertions," he claims

Hughes "tampered and doctored the video tape to show only 4 minutes."  (Doc. 87 at 13.)  This

allegation of tampering is wholly unsupported and conclusory, and is insufficient to respond to

Defendants' motion for summary judgment.  *See Duffie*, 600 F.3d at 371.  The use of force video

establishes that the trip to the medical building lasted approximately four minutes.  While the

battery of the video camera had to be replaced during the journey back to Plaintiff's cell, the

video indicates the return trip did not exceed four minutes.  In light of this and the absence of

any complaints from Plaintiff, during or following the return to his cell, that he was exposed

unnecessarily to freezing temperatures, Plaintiff cannot establish a deprivation so extreme that it

violated the Constitution nor has Plaintiff presented evidence to establish any harm resulting

from the alleged exposure to meet the requirements of *Farmer v. Brennan*, 511 U.S. 825, 847

(1994).  Accordingly, Defendant Hughes has shown she is entitled to judgment as a matter of

law on the merits of Plaintiff's claim and, *a fortiori*, has shown herself entitled to qualified

immunity.

**E.      Cover-Up by Defendant Hughes**

        Plaintiff's allegations that Defendant Hughes attempted to cover up Drake's use of force

are conclusory at best.  (Doc. 5 at 9.)  Plaintiff concedes as much in response to the motion for

summary judgment.  (Doc. 87 at 13.)  Plaintiff has alleged no fact to support the existence of any

conspiracy between Defendant Hughes and Defendant Drake to cover up Drake's use of force.

The DVD submitted into evidence further shows the nurses' examination at the infirmary and

clearly shows medical personnel were allowed to examine Plaintiff without any interference from security staff, including Defendant Hughes.  Further, at no time does the DVD, which shows the entirety of Plaintiff's infirmary visit without interruption, show Defendant Hughes telling the medical staff that nothing was wrong with Plaintiff.  Moreover, if, as determined earlier herein, Drake's use of force did not violate Plaintiff's Constitutional rights, any claim of a coverup, if one were proven, would likewise lack Constitutional dimension.  Lastly, Plaintiff has presented no evidence to support his claim of a coverup.  While he again attempts to blame this lack of evidence on the seizure of his discovery and disclosures, Plaintiff has not alluded to any particular document, whether he still possesses it or not, which would establish a constitutional violation.  Consequently, it is clear he has failed to plead or prove any specific violation of his constitutional rights by Defendant Hughes or shown, with specificity, evidence of any effort to cover for Defendant Drake following the use of force.  Accordingly, Defendant Hughes is entitled to judgment as a matter of law on the merits and on the basis of qualified immunity.

## F.    Failure to Protect Claims

Plaintiff alleges Defendants Drake and Woodruff failed to protect him from violence by other inmates.  (Doc. 5 at 10.)  "[P]rison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates."  *Longoria v. State of Texas*, 473 F.3d 586, 592 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)).  However, not every injury "by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  Under *Farmer*, an inmate "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm" and that Defendants were deliberately indifferent to his need for protection.

*Id.* An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate . . . safety" and disregards that risk. *Id.* at 837

Plaintiff's failure to protect claims against Defendants Drake and Woodruff are conclusory at best and do not rise to a constitutional violation.  In response to the motion for summary judgment, Plaintiff points to his "original complaint," which he contends "has all the evidence to establish his claims."  (Doc. 87 at 14.)  "Facts, not buzzwords, defeat a motion for summary judgment."  *Piper v. Kimberly-Clark Corp.*, 970 F.Supp. 566, 572 N.8 (E.D. Tex. 1997), *aff'd*, 157 F.3d 903 (5th Cir. 1998).

Plaintiff does not specify where, in his over one hundred page long original complaint, that evidence is to be found.  A summary judgment nonmovant must "identify specific evidence in the record, and articulate the 'precise manner' in which that evidence support[s] [his] claim[s]."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)(quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)).  The nonmovant must point directly to such evidence, since Rule 56 imposes no duty upon the Court to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Forsyth*, 19 F.3d at 1537.

Plaintiff fails to plead when the events at issue occurred, what Drake and/or Woodruff actually did or failed to do, or how they were deliberately indifferent to his need for protection. He fails to raise a specific violation of his constitutional rights under *Farmer*, 511 U.S. at 834.

Critically, Plaintiff has utterly failed to present summary judgment evidence or identify with specificity such evidence in the record to establish his claim.  Accordingly, Defendants Drake and Woodruff are entitled to judgment as a matter of law on the merits and on the basis of

qualified immunity.

**G.     Tampering with and/or Depriving of Food**

Plaintiff's vague allegations that Woodruff tampered with or deprived him of food (Doc. 5 at 10) fail to rise to a constitutional violation.  The summary judgment evidence reflects Woodruff had no involvement in preparing Plaintiff's food, had no authority to deny it to him, and only removed food trays from the food carrier and delivered them to inmates exactly as he received them.  (Def. MSJ at exh. E.)  In his unsworn response to the motion for summary judgment, Plaintiff states for the first time that Woodruff "would spit in [his] trays every chance he had."  (Doc. 87 at 11.)  Plaintiff cannot rely on unsubstantiated assertions or conclusory allegations in responding to a motion for summary judgment to create an issue of material fact. *Duffie*, 600 F.3d at 371.  Moreover, Plaintiff has completely failed to allege any harm as a result of Woodruff's alleged actions.  Because Plaintiff fails to raise a constitutional violation, Defendant Woodruff is entitled to judgment as a matter of law on the merits and on the basis of qualified immunity.

**H.     Deliberate Indifference by Wilkins**

Plaintiff claims that Defendant Wilkins denied and deprived him of medical care and threw away his sick-call requests.  (Doc. 5 at 11.)  These allegations, however, are general, conclusory, and unsubstantiated. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (to state a constitutional violation for denial of medical care, an inmate must allege acts or omissions "sufficiently harmful to evidence a deliberate indifference to serious medical needs"); *Domino v. Tex. Dept' of Criminal Justice*, 239 F.3d 752, 756 (2001) (the burden of demonstrating deliberate indifference to a serious medical need by correctional officials and healthcare providers is "an

extremely high standard to meet").  Plaintiff fails to plead when the events at issue occurred, what Wilkins actually did or failed to do, what serious medical need(s) Plaintiff suffered, how she was deliberately indifferent to a serious medical need and what harm resulted.  Moreover, the summary judgment evidence from Defendant Wilkins reflects Wilkins logged and responded to more than 30 of the 48 sick call requests Plaintiff submitted between November 2008 and September 2009, scheduling appointments and providing medicine as needed.  (Def. MSJ at Exh. C, 1-48.)   In his unsworn response to the motion for summary judgment, Plaintiff only states that he filed numerous grievances against Wilkins, complaining that she refused to evaluate him and that when she actually saw him, did so only through the "slither of a glass in the steel door." (Doc. 87 at 10.)

Even when liberally construed in light of his *pro se* status, Plaintiff's pleadings fail to allege deliberate indifference on the part of Defendant Wilkins, but assert, at most, a disagreement of opinion regarding the type of evaluation and treatment that he received, a claim that is insufficient as a matter of law to sustain a cause of action based on deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (absent exceptional circumstances, a prisoner's disagreement with his medical treatment is not actionable under section 1983). Accordingly, Defendant Wilkins is entitled to judgment as a matter of law on the basis of qualified immunity.

**I.      Racial Slurs by Wilkins**

Lastly, Plaintiff claims Defendant Wilkins used racial slurs against him.  (Doc. 5 at 11.) However, unprofessional as the alleged conduct may have been, mere verbal abuse or harassment by a prison guard does not amount to a constitutional violation.  *See Siglar v.*

*Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993))[2].  Therefore, Defendant Wilkins is entitled to judgment as a matter of law on basis of qualified immunity on this claim as well.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the District Court GRANT Defendants' motion for summary judgment (Doc. 67) and DISMISS this action with prejudice.

### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of March, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

---

[2]Defendant Wilkins denies ever using racial slurs toward plaintiff.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).